Chief Judge Fuld.
In July of 1963, the petitioners, who were employed as social, investigators, with tenure, by the Department of Welfare of the City of New York (hereafter referred to as the Department), addressed a letter, as representatives of a labor union, to the Director of the Bureau of Family Services of the United States Department of Health, Education and Welfare in Washington, D. C. Consisting of two pages, it combined criticism of existing procedures[1] and a request for infor *708 mation which (it was asserted) the petitioners had been unable to obtain from their superiors. The letter was not made public, and no copies were distributed. A month later, the City Commissioner of Welfare suspended the petitioners from their jobs and filed charges of misconduct against them; more specifically, they were accused (1) of making a number of false or misleading statements in the letter and (2) of exceeding the scope of their privileges as representatives of a minority labor organization. The Commissioner found them guilty and suspended them without pay for a period of 67 days. That determination was confirmed by the Appellate Division in this article 78 proceeding, and the appeal is before us, as of' right, on constitutional grounds.
The Supreme Court, in Pickering v. Board of Educ. (391 U. S. 563), held that those engaged in public employment may not ‘ ‘ constitutionally be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the [agency] in which they work” (p. 568) and that—in the light of New York Times Go. v. Sullivan (376 U. S. 254) — they may not be disciplined in the absence of proof that they made the statements in question ‘1 with knowledge of their falsity or with reckless disregard of their truth or falsity ’ ’. (See, also, Puentes v. Board of Educ., 392 U. S. 653.) After the Pickering case was handed down, respondent Commissioner, departing from his initial position, frankly acknowledged that his determination could not stand. In short, he concedes that the petitioners’ suspension “may not be” “based upon the falsity of [their] statements ” and suggests that “ the order appealed from should be reversed and [his] determination * * * annulled.” This, we note, is precisely the result arrived at in Matter of Puentes v. Board of Educ. (24 N Y 2d 996), also decided today.
However, the respondent urges, the matter should be remanded to him so that he may consider whether the communication written by the petitioners violated the “ grievance procedures ” mandated by the .Department.
There can be no doubt that it is highly disruptive and not conducive to maintaining the morale of an office or the efficiency *709 of its workers if employees were to be permitted to go outside their organization initially to register complaints concerning its operations. If, therefore, a designated grievance procedure has been prescribed, it is desirable, nay necessary, that the employees pursue and exhaust such procedure. It was for that reason that the. Supreme Court in Pickering left the door open to “ narrowly drawn grievance procedures ” which would require employees 1 ‘ to submit complaints about the operation [of their departments] to their superiors for action thereon prior to bringing the complaints before the public ” (391 U. S., at p. 572, n. 4).
The communication to the Director of the Federal Bureau in Washington was ill-considered, apparently written by the petitioners out of pique because they believed they were being saddled with an unduly heavy and burdensome case load. However, be that as it may, the record in the present case demonstrates that the subject matter -of the letter, critical though it may have been of the Welfare Department’s operations, could not be appropriately raised or dealt with through its grievance machinery. The procedure established by the Commissioner in his Executive Order No. 389 simply establishes machinery in the Department for dealing with the individual problems of employees. The plan of this so-called 11 grievance procedure ” is not unlike those found in private collective bargaining agreements which are neither designed nor intended to deal with such broad issues as those raised in the petitioners’ letter to the Federal Bureau in Washington.[2] The matters which the petitioners mentioned in the letter were not personal to them but concerned the entire Department, involving as it did general policies and practices in carrying out the Department’s functions. As bearing on this, it is of some significance that the Commissioner himself did not consider the procedure provided for in his Executive Order applicable as a method for resolving the matter. This is evidenced by the fact that the petitioners *710 were not accused of a failure to exhaust specific ‘ ‘ grievance procedures. ’ ’[3]
It is not amiss to point out that—regardless of the possible impact a communication such as that before us may have in another case — there was neither claim nor showing here that the petitioners interfered with New York City’s welfare program or neglected their duties as employees or that the letter created discipline problems or disharmony among the petitioners’ fellow employees.
Under all the circumstances, to paraphrase what we said in the Puentes case (24 N Y 2d, at p. 999), the single letter, which formed the predicate for the charges, 11 was permitted ** # * to be elevated into an issue” out of all proportion “to the occasion.” As already indicated, it furnishes insufficient basis for disciplinary action.
The order appealed from should be reversed, without costs, and the determination of the Commissioner of Welfare annulled.
Judges Burke, Scileppi and Bergan concur; Judge Jasen concurs in result only; Judge Breitel taking no part.
Crder reversed, without costs, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.

. It was stated, for instance, that social service workers were required to handle a physically unmanageable case load and that the 'State had failed to reduce such case load to comply with what the petitioners believed was the prescribed standard to qualify, for Federal contribution.

. In view of this conclusion, we need not reach the difficult question whether that Executive Order (No. 389) constitutes the sort of carefully or “ narrowly drawn grievance procedure ” which, the Supreme Court indicated in the Pickering ease (391 U. S., at p. 572, n. 4), employees may be required to follow before “ bringing their complaints before the public.”

. The specifications charged that the petitioners’ “ acts of misconduct * * * even if committed by [them] in [their] capacity as representatives or spokesmen of a minority labor organization, were outside the scope of the privileges accorded to minority labor organizations by the Mayor’s Executive Order No. 49 or the Commissioner’s Executive Order No. 389 ”. In other words, the Commissioner charged the petitioners not with failing to comply with any specified grievance procedure but solely with purporting to speak for the employees as their labor union representatives.